In the Matter of MARK D., Appellant, v MARION M., Respondent. [785 NYS2d 204]—

Appeal from an order of the Family Court, Monroe County (Gail A. Donofrio, J.), entered July 21, 2003 in a proceeding pursuant to Family Ct Act article 6. The order dismissed the proceeding seeking an order vacating an acknowledgment of paternity and order of filiation and support.

It is hereby ordered that the order so appealed from be and the same hereby is unanimously affirmed without costs.

Memorandum: Petitioner commenced this proceeding in September 2002 seeking an order vacating his previous "Acknowledgment of Paternity" and the order of filiation and support entered in 1994 based on alleged newly discovered evidence (see CPLR 5015 [a] [2]). Respondent cross-moved for an order "[s]ummarily dismissing and denying the relief" sought by petitioner and, alternatively, sought an order bifurcating the trial in order to determine the threshold issue of petitioner's alleged newly discovered evidence before proceeding to the issue of the child's best interests. Family Court granted that part of respondent's cross motion seeking bifurcation and, following the trial on the issue of newly discovered evidence, the court granted the remainder of respondent's motion and dismissed the proceeding without reaching the issue of best interests, including, inter alia, the issue of equitable estoppel. We affirm.

"An order of filiation 'purporting to settle something as fundamentally important as the paternity of a child is not susceptible of vacatur upon anything but newly discovered evidence strongly indicative of a result different than the one previously reached' " (Matter of Kim F. v Glenn W., 295 AD2d 995, 995 [2002], quoting Catherine A. v David B., 249 AD2d 964, 964 [1998], lv dismissed 92 NY2d 919 [1998]; see Matter of Jennifer

*LL. v Michael MM.*, 289 AD2d 896, 897 [2001]; *Matter of Beaudoin v Robert A.*, 199 AD2d 842, 844 [1993]; *Matter of Rosa v Diaz*, 136 AD2d 512, 513-514 [1988]). "Notably, the issue before Family Court was not whether [petitioner] is the child's biological father, but whether [he] made a sufficient demonstration that the prior order of filiation should be vacated" (*Matter of Jennifer W. v Steven X.*, 268 AD2d 800, 801 [2000]).

Giving due deference to the court's credibility determinations, we conclude that the evidence presented at trial supports the court's determination that the alleged newly discovered evidence did not provide a basis for vacatur of the order of filiation and support (*see id.*). The alleged newly discovered evidence presented by petitioner was a 2001 test indicating that he was infertile, and petitioner argued that he also was infertile in 1990, at the time respondent conceived the child. Even assuming, arguendo, that petitioner was infertile at the time respondent conceived the child, we conclude that petitioner could have discovered that information at the time of the filiation proceeding (*see generally* CPLR 5015 [a] [2]).

In any event, petitioner did not make a sufficient showing that the newly discovered evidence "strongly indicate[s]" that there would have been a different result in the filiation proceeding (*Catherine A.*, 249 AD2d at 964). Petitioner contends that, if he had known in 1994 that he was infertile, he would not have commenced the filiation proceeding. That contention is based upon the assumption that petitioner was infertile in 1994 and at the time respondent conceived the child, but the evidence "does not strongly indicate that [petitioner] is not the child's father" (*id.*). The theory of petitioner at trial was that he has always been infertile and therefore could not have fathered a child. In support of that theory, petitioner's urologist testified that petitioner's infertility was caused by a congenital defect or a childhood disease, i.e., mumps. On cross-examination, however, petitioner's expert admitted that, if he was told that petitioner used anabolic steroids, that would affect his conclusion concerning the cause of infertility. Respondent's theory at trial was that, although petitioner was presently infertile, he has not always been infertile and could have fathered a child at the time respondent conceived a child. In support of that theory, respondent's expert urologist testified that the medical evidence suggested that petitioner's infertility was not caused by a congenital defect or by mumps. Rather, the medical evidence supported the conclusion that petitioner's infertility at the time of the 2001 test resulted from the ingestion of anabolic steroids. He explained that taking steroids is akin to using a contracep-

tive device and that, once a person stops taking steroids, sperm production could improve. Petitioner admitted taking steroids between 1985 and 1990, but he testified that he had stopped taking them in 1990 and has not taken them since that time. Petitioner's brother testified that he saw petitioner take steroids in 1992 and 1996, which undermines petitioner's credibility and supports respondent's theory that petitioner's current infertility was caused by the ingestion of anabolic steroids. The court was entitled to credit the brother's testimony over that of petitioner.

We reject petitioner's further contention that the court should have ordered DNA testing to aid in the determination "of the medical issues involving biological paternity." The court properly determined as a threshold issue that the order of filiation and support should not be vacated based on alleged newly discovered evidence and thus did not reach the "medical issues involving biological paternity" for which the DNA testing would be relevant. Moreover, the court never reached the issue whether it would not be in the best interests of the child to order such testing based on, inter alia, equitable estoppel (*see* Family Ct Act § 418 [a]). Present—Hurlbutt, J.P., Kehoe, Gorski, Martoche and Hayes, JJ.